**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TRISTAN JENKINS,

                                   Plaintiff,

                - v -                                    Civ. No. 9:16-CV-1491
                                                                (MAD/DJS)

PETE MEDERT,

                                   Defendant.

**APPEARANCES:**                          **OF COUNSEL:**

TRISTAN JENKINS
Plaintiff *Pro Se*
12-A-2662
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

ALBANY COUNTY ATTORNEY'S OFFICE           SIA Z. GOOGAS, ESQ.
Attorney for Defendant                    Assistant County Attorney
112 State Street
Albany, New York 12207

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Tristan Jenkins brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging that Defendant Medert used excessive force against him.  Dkt. No. 1,

Compl.  On February 14, 2018, Defendant filed a Motion for Summary Judgment pursuant

to Federal Rule of Civil Procedure 56(a).  Dkt. No. 43.  Defendant separately filed a DVD

containing video surveillance footage as part of his submission.  Dkt. No. 46.  Plaintiff has

opposed the Motion. See Dkt. No. 47. Defendant filed a Reply. Dkt. No. 49. For the reasons that follow, the Court recommends **granting** Defendant's Motion for Summary Judgment.

## I. BACKGROUND[1]

During the time relevant to this action, Plaintiff was an inmate at the Albany County Correctional Facility ("ACCF"). Dkt. No. 43-19, Affidavit of Kevin Cannizzaro ("Cannizzaro Aff."), Ex. R, Deposition of Plaintiff ("Pl.'s Dep."), p. 18. Plaintiff was in custody as a result of an arrest for an alleged parole violation. *Id.* While incarcerated Plaintiff was classified as a security risk as a result of a prior attempt to escape from the Albany Police Department. *Id.* at p. 41; Dkt. No. 43-16, Cannizzaro Aff., Ex. O. Security Risk Group inmates are deemed to present an increased threat to facility safety and security. Dkt. No. 43-22, Affidavit of Peter Medert ("Medert Aff."), ¶ 13. Inmates in the Security Risk Group wear a special jail uniform, with black and white stripes, to distinguish them from other inmates. *Id.* at ¶ 14.

Defendant is employed as a Corrections Officer at ACCF. *Id.* at ¶ 1. On September 9, 2015, Defendant was assigned to escort Plaintiff from his housing unit to a facility

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* While Plaintiff's Counter-Statement of Material Facts does not comply with Rule 7.1, *see* Dkt. No. 47, in deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

visitation room for a scheduled visit. *Id.* at ¶ 11.  When he first encountered Plaintiff, Defendant recognized that Plaintiff was wearing a Security Risk Group uniform. *Id.* at ¶ 12. The pair began walking out of Plaintiff's housing unit toward the visitation room with Plaintiff in front of Defendant. *Id.* at ¶¶ 16-17.  Defendant believed that Plaintiff was walking too fast and getting too far in front of him so he gave Plaintiff a direct order to slow down and then another to stop. *Id.* at ¶¶ 18-19 & 22.  While not agreeing to characterize them as direct orders, Plaintiff concedes that Defendant twice told him to slow down. Pl.'s Dep. at pp. 47-48.  Defendant felt that Plaintiff was intentionally ignoring his orders and he then grabbed either Plaintiff's collar, Medert Aff., ¶¶ 24-26, or his religious head covering. Pl.'s Dep. at p. 38.[2]  Defendant's only physical contact with Plaintiff was grabbing Plaintiff. *Id.* at p. 45.  He held on to Plaintiff for roughly three to five seconds. *Id.* at pp. 84-86; Dkt. No. 43-22, Cannizzaro Aff., Ex. L, Video Surveillance Footage from ACCF ("ACCF Video") at 12:30:17-12:30:22.[3]  Defendant did not punch, kick, or otherwise strike Plaintiff. Pl.'s Dep. at p. 45.  Plaintiff remained on his feet at all times during the brief incident. *See generally* ACCF Video.

Following the incident, Plaintiff returned to his housing unit.  Medert Aff. at ¶ 31. Plaintiff spoke with a Sergeant and another officer about the incident with Defendant, but

---

[2] There is ACCF surveillance camera video footage of the incident, but it is not clearly dispositive of where Plaintiff was grabbed. This dispute is not a material factual dispute for purposes of the Motion because where Plaintiff was grabbed would not alter the analysis that follows.

[3] The DVD of the surveillance footage contains nine different files showing different areas within ACCF. The file named "04.oml" depicts the use of force underlying this litigation. All references to the ACCF Video refer to that particular file, unless otherwise noted.

did not report to either of them that he had suffered any injuries. Pl.'s Dep. at pp. 52-53. Plaintiff had no injuries immediately after the incident and did not seek medical attention that day. *Id.* at p. 53. He was subsequently escorted without incident to his scheduled visit by another officer. *Id.* at pp. 54-55.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such

statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendant seeks summary judgment dismissing Plaintiff's excessive force claim on the ground that his action was a *de minimis* use of force and that it was objectively

reasonable.  Dkt. No. 43-23, Def.'s Mem. of Law, pp. 4-15.  Defendant also seeks summary judgment on the use of force claim on the ground of qualified immunity.  *Id.* at pp. 15-18. Defendant seeks summary judgment as to Plaintiff's negligence and intentional infliction of emotional distress claims on the ground that Plaintiff failed to comply with the provisions of New York General Municipal Law regarding these state law claims.  *Id.* at pp. 18-20. Finally, Defendant contends that Plaintiff's intentional infliction of emotional distress ("IIED") claim is barred by the applicable statute of limitations.  *Id.* at p. 18, n. 7. Defendant's arguments are considered in turn below.

### A. Excessive Force

Defendant points out that there is a split of authority as to whether or not an alleged parole violator should be treated as a convicted prisoner or a pretrial detainee.  Def.'s Mem. of Law at p. 8 n. 3.  The distinction is an important one because it controls the applicable legal standard that would apply to Plaintiff's excessive force case.  *Hill v. County of Montgomery*, 2018 WL 2417839, at *1 (N.D.N.Y. May 29, 2018).  "Whether to classify an individual detained for a suspected probation violation as a pretrial detainee or a convicted prisoner is an 'unresolved and difficult question.'"  *Id.* at * 2 (quoting *Harry v. Suarez*, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012)).  Here, Plaintiff alleges that he was a pretrial detainee at the time of the incident in question.  Compl. at p. 4.  Defendant also "chooses to proceed" under what he terms the "more favorable standard" for Plaintiff and has addressed his arguments presuming that Plaintiff was a pretrial detainee.  Def.'s Mem.

of Law at pp. 8-9, n. 3.

For purposes of this Motion, therefore, the excessive force claim is analyzed under the 14th Amendment Due Process Clause rather than the 8th Amendment's Cruel and Unusual Punishments Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To establish such a claim "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (citing *Ross v. Correction Officers John & Jane Does 1–5*, 610 Fed. Appx. 75, 76 n. 1 (2d Cir. 2015)). Assessing the objective reasonableness of any use of force in this context necessarily depends on the facts and circumstances of each case, but relevant factors include

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Thus, a pretrial detainee can make a showing if the force 'was taken with an expressed intent to punish' or 'by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental purpose or that it is excessive in relation to that purpose.'" *Parson v. Barboza*, 2016 WL 7261550, at *5 (N.D.N.Y. June 28, 2016), *report and recommendation adopted*, 2016 WL 4398522 (N.D.N.Y. Aug. 18, 2016) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. at 2473)).

With this standard in mind, the Court begins with the video of the event. Plaintiff admits that the video is a fair representation of the grabbing incident. Pl.'s Dep. at p. 100. The Court has reviewed the video in consideration of this Motion because, as the Supreme Court has noted, reliance upon a video record in connection with a summary judgment motion is wholly appropriate. *Scott v. Harris,* 550 U.S. 372, 379-80 (2007). The relevant portion of the video begins with Plaintiff coming into the picture and walking in a direction away from the video camera. ACCF Video at 12:30:08.5. Defendant is not visible when Plaintiff is first seen. *Id.* Plaintiff then slows down and turns toward Defendant, who is still not seen. *Id.* at 12:30:10.5. This was done in response to Plaintiff being told to stop by Defendant. Pl.'s Dep. at p. 83. The video shows that while Plaintiff slows down, he does not stop. Plaintiff then continues to walk away from Defendant who first appears in the video around 12:30:11.9. The two can be seen having a discussion while Plaintiff continues to walk away. ACCF Video. 12:30:10.5-12:30:15.9.

The parties then round a corner and go out of sight of the camera briefly. ACCF Video at 12:30:17.4. This is when Defendant grabs Plaintiff. Pl.'s Dep. at p. 84. Plaintiff concedes that no other use of force, other than being grabbed took place while off camera. *Id.* When the parties reappear in the footage, Defendant has grabbed and remains holding on to Plaintiff. ACCF Video at 12:30:20.3. Plaintiff is then released and, after a brief pause, heads back in the direction of his housing unit. *Id.* at 12:30:22-12:30:29.

After considering the various factors outlined in *Kingsley* as relevant to the

-8-

reasonableness of the force, the Court concludes that Defendant's Motion should be granted. *Kingsley* instructs that the Court should consider "the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S.Ct. at 2473. Inherent in a corrections officer's job duties is maintaining control over inmates in his custody. Medert Aff. at ¶¶ 5-6; *see also Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 338 (E.D.N.Y. 2014) (discussing job duties of county corrections officer). On the facts present here, Defendant had particular reason to be concerned about Plaintiff speeding ahead of him. Plaintiff had previously attempted to flee police officers and as a result was specifically classified as a security risk. Pl.'s Dep., at p. 41; Cannizzaro Aff., Ex. O; Medert Aff. at ¶ 13. During the escort Plaintiff was told several times to slow down. Medert Aff. at ¶¶ 19 & 22; Pl.'s Dep. at pp. 82-83. Defendant, aware of Plaintiff's special security status, felt that Plaintiff was moving too quickly and getting too far in front of him, potentially creating a security problem. Medert Aff. at ¶ 24. The two were then involved in an animated discussion seconds before Defendant grabbed Plaintiff. ACCF Video at 12:30:10.5-12:30:15.9.

Courts also must consider "the relationship between the need for the use of force and the amount of force used [and] any effort made by the officer to temper or to limit the amount of force." *Kingsley v. Hendrickson*, 135 S.Ct. at 2473. The force used here was limited. The only force alleged by Plaintiff is what he described at his deposition as "a grab and yank." Pl.'s Dep. at p. 44. The entirety of the force used in this case involved a singular grab

of Plaintiff by Defendant. *Id.* at p. 44-45; Medert Aff. at ¶ 26. It is undisputed that Defendant did not strike or kick Plaintiff or make physical contact with him in any other way. Pl.'s Dep. at p. 45; Medert Aff. at ¶ 29. Additionally, force was used only after Defendant had given several unsuccessful directions to Plaintiff to slow down. Medert Aff. at ¶ 26. The record establishes that Defendant did not resort to grabbing Plaintiff as his first option and when force was used it was very minimal in nature.

Finally, *Kingsley* directs that "the extent of the plaintiff's injury" be considered. *Kingsley v. Hendrickson*, 135 S.Ct. at 2473. In the immediate aftermath of the incident, Plaintiff made no complaint of any injuries. Pl.'s Dep. at pp. 52-53. He specifically denied having any neck or back pain immediately after the incident. *Id.* at p. 53. He also proceeded to go to his scheduled visit. Pl.'s Dep. at pp. 54-55. Plaintiff reported to sick call in the days after the incident complaining of a stiff neck and lower back pain. *Id.* at pp. 59-60. He contends that that pain limited his ability to participate in physical activities while incarcerated, but offers no medical evidence in support of that claim. *Id.* In opposing the Motion, Plaintiff does not reference any alleged physical injuries in either his Brief in Opposition to Defendant's Summary Judgment Motion or his Declaration. *See* Dkt. No. 47, Plaintiff's Opposition to Summary Judgment.

When considered in total, the *Kingsley* factors demonstrate that the use of force at issue here was objectively reasonable. The event underlying this litigation involved a single use of force, grabbing Plaintiff for, at most, a few seconds and it was done in the context of

an inmate's failure to fully comply with staff directions, did not require any immediate medical attention, and does not appear to have resulted in any significant injury to Plaintiff. This conclusion is consistent with a long line of cases finding no constitutional violation in the face of a *de minimis* use of force.  *See*, *e.g.*, *Judge v. Gibson*, 2015 WL 926388, at *8 (N.D.N.Y. Mar. 4, 2015) (finding allegation that defendant kicked plaintiff's "feet further apart and then grabbed his neck, at which point plaintiff fell to his hands and knees onto a bench where defendant [ ] slapped [plaintiff] three times on the back of the head" *de minimis*); *Hilson v. Maltese*, 2012 WL 6965105, at *7 (N.D.N.Y. Dec. 14, 2012), *report and recommendation adopted*,  2013 WL 375489 (N.D.N.Y. Jan. 30, 2013) (conduct including bringing an inmate to the floor to apply restraints and "controlled punches" while inmate struggled deemed *de minimis*); *Taylor v. New York Dep't of Corr.*, 2012 WL 2469856, at *4 & n. 2 (S.D.N.Y. June 27, 2012) (citing cases).

## B. Qualified Immunity

Defendant alternatively seeks summary judgment on the ground that he is entitled to qualified immunity.  Def.'s Mem. of Law at pp. 15-18.  Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if

'"officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, even if the Court were to accept that a question of fact existed as to the underlying violation, the Court would find Defendant has qualified immunity. This is so because based on existing law, no reasonable corrections officer could have known that the three to five second grab depicted in the facility surveillance video was objectively unreasonable under the circumstances.

### C. State Law Claims

Under New York General Municipal Law section 50-e "a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226–27 (2d Cir. 2016) (citing *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)). As to the negligence and IIED claims in the Complaint, Plaintiff was obligated to comply with this requirement because "in a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Plaintiff concedes that he did not file a notice of claim. Pl.'s Dep. at p. 37. Having failed

to do so, his state law claims must be dismissed. *Faccio v. Eggleston*, 2011 WL 3666588, at *15 (N.D.N.Y. Aug. 22, 2011); *Baker v. Willett*, 42 F. Supp. 2d 192, 197–98 (N.D.N.Y. 1999).

In the alternative, Plaintiff's IIED claim is subject to dismissal because it concerns the same conduct underlying her excessive force claim and under New York law "no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Russo v. Cty. of Warren*, 2015 WL 7738043, at *10 (N.D.N.Y. Dec. 1, 2015), *adhered to on reconsideration*, 2016 WL 843373 (N.D.N.Y. Mar. 1, 2016). Plaintiff's negligence claim is similarly subject to dismissal because under New York law "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 43) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

*-13-*

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[4] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  July 2, 2018
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*-14-*